FILED
2005 Oct-03 PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| YOUR LORD MY MAJESTY ALLAH also known as ALVIN PHILLIPS, ) ) ) Plaintiff, ) ) vs. ) ) CORRECTIONAL OFFICER J. GLADDEN, ) ET AL., ) ) Defendants. ) | 4:00-cv-01409-RBP-TMP |

<u>MEMORANDUM OPINION</u>

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Your Lord My Majesty Allah, also known as Alvin Pierre Phillips, alleges that his constitutional rights were violated on April 18, 2000, while he was incarcerated at the St. Clair Correctional Facility in Springville, Alabama. Plaintiff is presently incarcerated at the Holman Correctional Facility in Atmore, Alabama. The *pro se* complaint was filed on May 25, 2000, naming as defendants Correctional Officer J. Gladden, Correctional Officer D. Scott, Correctional Officer L. Jackson, Captain Varner,[1] Warden A. Garrett, Dr. Hammack,[2] Commissioner Michael Haley, J. Sanderson, E. Pickett, and Nurse Battle. On May 28, 2003, the court dismissed all of plaintiff's claims against defendants Commissioner Michael Haley and Warden A. Garrett and plaintiff's claims that

---

[1] The court notes that plaintiff incorrectly identified defendant Varner as Captain Vernon in his complaint.

[2] It is noted that plaintiff incorrectly identified defendant Dr. Hammack as Dr. Hamlin in his complaint.

defendants J. Gladden, E. Pickett, and J. Sanderson denied him due process in connection with two disciplinaries (*See* Doc. # 15). Left pending by the court's earlier order were plaintiff's claims against defendants J. Gladden, D. Scott, and L. Jackson, for use of excessive force against the plaintiff, and his claims against Captain Varner, Nurse Battle, and Dr. Hammack for denial of adequate medical care. Plaintiff seeks monetary damages.

On January 28, 2002, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to defendants Correctional Officer J. Gladden, Correctional Officer D. Scott, Correctional Officer L. Jackson, Captain Varner, Nurse Battle, and Dr. Hammack and requesting that they file a special report responding to the factual allegations of the complaint. On April 2, 2002, defendants Gladden, Scott, Jackson, and Varner filed their special report, attaching to it documents and the affidavits of defendants Scott, Varner, and Jackson and Warden Ralph Hooks. On September 7, 2004, defendants Battle and Hammack filed their special report, attaching documents and defendant Hammack's affidavit. By Order of September 22, 2004, the parties were notified that the special reports filed by the defendants would be construed as motions for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff did not file a response.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most

favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On April 18, 2000, defendant Jackson was present when defendants Gladden and Scott escorted plaintiff into the segregation property room (defendant Jackson's affidavit). Plaintiff was not wearing restraining devices (defendant Jackson's affidavit). After defendants Gladden and Scott had entered the property room with plaintiff, defendant Jackson left and returned to the shift office (defendant Jackson's affidavit). Defendant Scott was assisting defendant Gladden with the out-processing of plaintiff from the segregation unit (defendant Scott's affidavit page one). Plaintiff was being released from disciplinary segregation to be reassigned to population. When defendant Gladden gave plaintiff his property, plaintiff complained that some of his belongings were missing (defendant Scott's affidavit page one). Defendant Gladden assured plaintiff that all of his property was there, but plaintiff became more belligerent, saying, "A nigger can't have nothing, you cracker motherfuckers take everything." (defendant Scott's affidavit page one). When defendant Gladden returned to the counter to give plaintiff a laundry bag, plaintiff sprang up on the counter top and kicked defendant Gladden in the face (defendant Scott's affidavit page one). Defendant Gladden sprayed plaintiff with Freeze + P (plaintiff's complaint page four and defendant Scott's affidavit page one). Plaintiff then charged into defendant Gladden and scratched him in the face (defendant Scott's affidavit page one). Defendant Gladden then hit plaintiff across the arms with his expandable baton (plaintiff's complaint page three and defendant Scott's affidavit page one). When plaintiff grabbed defendant Gladden and began to wrestle, defendant Scott grabbed plaintiff and assisted defendant Gladden in forcing plaintiff to the floor (defendant Scott's affidavit page one). On the way

4

to the floor, plaintiff's head hit the side of the processing counter (defendant Scott's affidavit page one). Plaintiff continued to resist until defendant Gladden put handcuffs on him (defendant Scott's affidavit page two). Sergeant Samuel Howard was advised of the incident. Defendant Gladden reported to the infirmary and was treated and released (defendant Scott's affidavit page two). Officer William Norman and defendant Scott escorted plaintiff to the infirmary where he was treated and released to segregation (defendant Scott's affidavit page two and defendant Hammack's affidavit page two). During the examination, plaintiff was noted to have a small amount of swelling to the left orbit and left side of the head (defendant Hammack's affidavit page two). No other abnormalities were noted. An x-ray was ordered of nasal bones, facial bones, and mandible, the report for which disclosed "No abnormalities noted" (defendant Hammack's affidavit page two). Defendant Jackson saw plaintiff being escorted to the infirmary and observed that he had been handcuffed (defendant Jackson's affidavit). Plaintiff was returned to his cell, K-16, and placed in stripped cell status (defendant Scott's affidavit page two).

## DISCUSSION

**Official Capacities**

Plaintiff sued the defendant corrections officers in their official capacities; however, they are employees of the State of Alabama and cannot be held liable in damages, in their *official* capacities, for their own acts or those of their employees because they enjoy the State's Eleventh Amendment immunity. *Alabama Department of Corrections v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978). Suit for damages against state officers in their official capacity is functionally suit against the State itself. *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114

(1985). Such officers are entitled to dismissal of any claims for damages brought against them in their official capacities as state officials. The United States Supreme Court has stated:

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed.2d 389 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed.2d 269 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). To the extent they are sued in their official capacities, the suit against the defendants is a suit against the state. There has been no consent or waiver in this action; thus, the defendants, in their official capacities, are absolutely immune from damages liability in this action.

**Individual Capacities**

<u>Use of Excessive Force</u>

Plaintiff claims that defendants Gladden, Scott, and Jackson used excessive force upon him on April 18, 2000, in the segregation property room. The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 112 S. Ct. 995 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that

6

set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 112 S. Ct. at 999. In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Id*. at 998-9 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. The *Hudson* Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id*. at 999.

It is noted that in determining what facts are undisputed, the court must begin with those specifically and expressly stated by the plaintiff. But, the process does not end there. In addition to the facts stated by the non-moving plaintiff, the court must also take into account those facts stated by the defendant which are not disputed by the plaintiff. Facts submitted by a defendant and not expressly disputed by the plaintiff cannot be ignored in the summary judgment calculus because they

too exist as "undisputed" facts. As the Supreme Court explained in *Celotex*, the ultimate burden is on the plaintiff to come forward with evidence supporting each element of his claim. Because the burden of proof in the lawsuit is on the plaintiff, he may not merely rest upon conclusory or vague pleadings, but must affirmatively rebut evidentiary matters offered by the defendant which, if left undisputed, show that the plaintiff is not entitled to recover in the action.

Plaintiff claims that defendant Jackson punched and stomped him on April 18, 2000 (plaintiff's complaint page four). In her sworn and undisputed affidavit, defendant Jackson states that although she was present when defendants Gladden and Scott escorted plaintiff into the segregation property room, she returned to the shift office after the three entered the property room. She states further in her sworn and undisputed affidavit that she was not present when the altercation occurred. Plaintiff does not dispute defendant Jackson's statement that she was not present when the altercation occurred. Clearly, since defendant Jackson was not present when the altercation occurred, she could not have used excessive force upon plaintiff. Defendant Jackson is entitled to summary judgment with respect to plaintiff's claim that she used excessive force upon him on April 18, 2000. But even if the allegation in plaintiff's complaint is sufficient to create a fact dispute as to whether Officer Jackson was present and participated in the force used against plaintiff, the force used was reasonable and necessary for the reasons explained below.

With respect to plaintiff's claim that defendants Gladden and Scott used excessive force upon him on April 18, 2000, applying the factors set forth in *Whitley* to the facts of this case, it is clear that there was a need for the application of force. Plaintiff has not undisputed that when defendant Gladden returned to the counter in the property room to give plaintiff a laundry bag, plaintiff sprang onto the counter top and kicked defendant Gladden in the face. It is further undisputed that after

8

defendant Gladden sprayed plaintiff with Freeze + P, plaintiff then charged into defendant Gladden and scratched him in the face. It is also undisputed that plaintiff grabbed defendant Gladden and began wrestling with him after defendant Gladden hit him across the arms with his baton. Clearly, defendants Gladden and Scott were faced with a violent and dangerous inmate upon whom they had to apply force in order to prevent further injury to themselves and to restore order.

    Secondly, it appears to the court that the amount of force used in this instance did not rise to the level of force used "maliciously or sadistically" in violation of the Eighth Amendment. In his complaint, plaintiff claims that defendant Gladden used his baton in one hand and made a fist with his other hand to beat him and that he used his feet to kick and stomp him (plaintiff's complaint page three). Plaintiff claims further that defendant Scott punched, kicked, and stomped him (plaintiff's complaint pages three and four). In his sworn and undisputed affidavit, defendant Scott states that plaintiff sprang onto the counter top in the property room and kicked defendant Gladden in the face. Plaintiff does not deny this fact. Both plaintiff and defendant Scott agree that defendant Gladden sprayed plaintiff with Freeze + P. Defendant Scott states in his affidavit that after plaintiff was sprayed with Freeze + P, he charged into defendant Gladden and scratched him in the face. Plaintiff does not deny this fact. Both plaintiff and defendant Scott agree that defendant Gladden hit plaintiff with his baton. Defendant Scott states in his affidavit that after defendant Gladden hit plaintiff across the arms with the baton, plaintiff grabbed defendant Gladden and began wrestling with him. It was at that point that defendant Scott assisted defendant Gladden in taking plaintiff to the floor. Plaintiff does not deny these facts. It is further undisputed that plaintiff continued to resist until defendant Gladden put handcuffs on him. Neither party contends that additional force was used after plaintiff was handcuffed.

9

Even if such force were sufficiently serious to implicate the Eighth Amendment, a balancing of the *Whitley* factors makes plain that the force used was in good faith to restore order and discipline and was not maliciously or sadistically applied. The correctional officers were faced with an angry, openly hostile inmate who posed a threat to institutional order and to their safety. The court will not engage in second-guessing the level of force used by the officers to protect themselves, unless it is so extreme as to amount to the "malicious and sadistic" use of force. In this case, it did not approach that level.

Third, because it is undisputed that plaintiff kicked defendant Gladden in the face, charged defendant Gladden, scratched defendant Gladden in the face, grabbed defendant Gladden, and continued to resist after being taken to the floor by defendants Gladden and Scott, the court finds that it was reasonable for the officers to perceive a threat to themselves. With respect to the fourth factor, it is clear that the officers made an effort to temper the severity of their response. It is not disputed that defendant Gladden tried to compel plaintiff to behave by spraying him with Freeze + P after plaintiff had kicked him in the face, but plaintiff continued his assault upon defendant Gladden by charging him and scratching him. It was at that point that defendant Gladden used the baton upon plaintiff and when plaintiff continued to fight, he was taken to the floor. It is further undisputed that once plaintiff was handcuffed and stopped resisting, the use of force ceased; plaintiff makes no allegation of any force after he stopped resisting. The only items used to restrain plaintiff before he was taken to the floor were the Freeze + P and the baton, neither of which worked. Clearly, the force was tempered and reasonable.

Finally, plaintiff suffered only minor injuries as a result of the use of force. It is undisputed that when defendants Gladden and Scott were taking plaintiff to the floor, plaintiff's head hit the side

of the processing counter. Plaintiff was taken to the health care unit for a body chart following the altercation, which examination revealed only a small amount of swelling to the left orbit and left side of the plaintiff's head. No other abnormalities were noted. Defendant Hammack states in his sworn and undisputed affidavit that an x-ray was ordered of nasal bones, facial bones, and mandible, and that the result was reported as "no abnormalities noted." Although plaintiff claims that following the incident, he was in "clear and obvious need of 24 hour medical supervision", plaintiff has offered no substantial evidence to support his allegations of injuries. The treatment record completed by the nurse who examined plaintiff states that upon physical examination of plaintiff, a small amount of swelling was noted to the left eye area, a small amount of swelling was noted to the left jaw area, a small abrasion was noted to the left side of the head just below the hair line, a small amount of bruising was noted to the left eye lid, and no other abrasions or lacerations (See Exhibit B attached to defendants Hammack and Battle's special report).

Under these circumstances, the court has no difficulty concluding that the undisputed evidence fails to show that the officers acted maliciously and sadistically but, on the contrary, acted in good faith to restore order. Defendants Gladden and Scott are entitled to summary judgment on this claim.

Denial of Medical Treatment

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure to provide medical treatment amounted to cruel and unusual treatment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel

11

and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97 (1976). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991), quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). As stated by the *Estelle* Court, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). Neither will a mere difference of an opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. at 106-08.

In *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986), the Eleventh Circuit held that an inmate's dissatisfaction with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference. The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions. *Barfield,* 883 F.2d at 938. Two

components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir. 1989).

Plaintiff claims that defendant Varner denied him medical treatment for two days following the April 18, 2000, incident. He states specifically that defendant Varner placed him in a stripped cell for two days "after [he] was beaten" even though it was obvious that he was clearly in need of twenty-four hour medical supervision (plaintiff's complaint pages four and attached page one). In his sworn and undisputed affidavit, defendant Varner states that plaintiff was escorted to the Health Care Unit immediately following the incident with defendant Gladden on April 18, 2000, at 1:40 p.m. Defendant Jackson states in her sworn and undisputed affidavit that shortly after she had left the property room, she observed plaintiff being escorted to the infirmary. Defendant Scott states in his sworn affidavit that he and Officer Norman escorted plaintiff to the infirmary following the incident. He states further that plaintiff was treated and released to segregation. Further, the undisputed medical records attached to defendants Hammack and Battle's special report reveal that plaintiff was taken to the infirmary following the incident (see Exhibit B attached to defendants Hammack and Battle's special report).

Plaintiff does not deny that he was taken to the health care unit following the incident on April 18, 2000. Rather, his argument seems to be that he should not have been released from the health care unit to be placed in segregation. Regardless of whether or not there was evidence of a serious medical need in this instance, it is clear that defendant Varner's response to plaintiff's need for medical attention following the incident in the property room did not amount to deliberate

13

indifference. Plaintiff was immediately taken to the health care unit. It cannot be said that defendant Varner denied plaintiff medical attention. Defendant Varner is entitled to summary judgment on this claim.

Plaintiff's next claim is that defendant Nurse Battle denied him proper medical attention on April 18, 2000. He states specifically that defendant Battle screened him on April 18, 2000, following the incident, but she "failed to follow CMS medical procedures regarding injuries of the kind" he sustained (plaintiff's complaint attached page one). Defendant Battle is entitled to summary judgment on this claim for several reasons. First, plaintiff does not state what medical procedures he alleges defendant Battle failed to follow. Plaintiff's claim is due to be dismissed because plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). Even a *pro se* plaintiff "must allege facts, not legal conclusions." *Hanson v. Town of Flower City*, 679 F.2d 497, 504 (5th Cir. 1982). Second, plaintiff alleges that defendant Battle failed to follow Correctional Medical Services' medical procedures. However, the mere fact that agency regulations have been violated does not by itself raise a constitutional issue. *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981). Third, it is clear from the body chart completed by defendant Battle following the April 18, 2000, incident that defendant Battle was not deliberately indifferent to plaintiff's medical needs. According to the undisputed medical records, defendant Battle examined plaintiff, noted his injuries, and even ordered x-rays of his nose and jaw bilaterally (see Exhibit B attached to defendants Hammack and Battle's special report). Clearly, defendant Battle took the time to carefully examine plaintiff and to note areas in which there was swelling, abrasions,

or bruising.  It cannot be said that defendant Battle's response to plaintiff's need for medical attention amounted to deliberate indifference.  It is clear that plaintiff was not denied medical treatment. Plaintiff did not receive the medical treatment that he desired. There were certain unidentified CMS procedures which plaintiff wanted defendant Battles to follow.  This is simply a case where the inmate's opinion as to the medical treatment he should have received differed from the opinion of the medical staff.  However, as previously noted, a mere difference of an opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone does not give rise to a cause of action under the Eighth Amendment.  The undisputed facts establish that defendant Battle was not deliberately indifferent to plaintiff's medical needs. Defendant Battle is, therefore, entitled to summary judgment.

Plaintiff next claims that defendant Dr. Hammack was indifferent to his  medical needs and failed to provide the necessary medical treatment, in the form of pain medication, for the injuries he sustained on April 18, 2000 (plaintiff's complaint attached page one).  It is clear from the evidence presented that plaintiff was not denied medical treatment.  Here again, plaintiff did not receive the medical treatment that he desired. Plaintiff states in his complaint that defendant Hammack did not prescribe pain medication for him, but he does not allege that he even asked defendant Hammack for pain medication.  Clearly, if defendant Hammack did not know that plaintiff wanted or needed pain medication, he could not have known that there was a need to prescribe it.  As above, this is simply a case where the inmate's opinion as to the medical treatment he should have received differed from the opinion of the medical staff.  However, as previously noted, a mere difference of an opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone does not give rise to a cause of action under the Eighth Amendment.  The undisputed facts establish

that defendant Hammack was not deliberately indifferent to plaintiff's medical needs. Defendant Hammack is, therefore, entitled to summary judgment on this claim.

Plaintiff claims further that defendant Hammack denied him proper medical treatment on September 29, 1999. Plaintiff claims that on September 29, 1999, he complained to defendant Hammack that he was experiencing an inability to walk and/or severe difficulty walking. As background, defendant Hammack states in his sworn and undisputed affidavit that on September 19, 1999, plaintiff was seen by Nurse Gregory in the infirmary. He states that plaintiff complained that he was jogging and started having pain in the left knee (defendant Hammack's affidavit page one). Defendant Hammack states that a physical examination showed only subjective tenderness on manipulation of the knee. No swelling was noted. Defendant Hammack states further that plaintiff's skin was normal and showed no abrasions. He states that plaintiff gave a history of a previous injury to the knee and stated that three surgeries had been performed on it (defendant Hammack's affidavit page one). Defendant Hammack reports that plaintiff was advised to stay off the leg as much as possible, to keep it elevated, and to place an ice pack on it intermittently for 24 hours (defendant Hammack's affidavit page one). Defendant Hammack saw plaintiff on September 29, 1999 as a follow-up for folliculitis (defendant Hammack's affidavit page one), at which time plaintiff complained of pain in the left knee after jogging and that plaintiff told him that he had had three surgeries on the knee when he was a child (defendant Hammack's affidavit page one). Defendant Hammack states that plaintiff was admitted to the infirmary for bed rest and was prescribed Motrin 600 tid for seven days. X-rays of the left knee were obtained on September 30, 1999, which showed no evidence of fracture or other abnormality (defendant Hammack's affidavit page one).

It is undisputed that on September 29, 1999, defendant Hammack admitted plaintiff to the infirmary for bed rest and prescribed Motrin 600 for pain after plaintiff complained of pain in the left knee. It is also undisputed that defendant Hammack ordered x-rays on plaintiff's left knee. Clearly, defendant Hammack was not deliberately indifferent to plaintiff's medical needs. Upon being presented with plaintiff's complaint of pain, defendant responded by admitting plaintiff to the infirmary, ordering bed rest, prescribing pain medication, and ordering x-rays. It cannot be said that defendant Hammack's response to plaintiff's medical need amounted to deliberate indifference. Defendant Hammack is entitled to summary judgment on this claim.

Plaintiff's final claim is that defendant Hammack denied him proper medical treatment on March 26, 2000, when he was screened on an emergency basis after being brought to the infirmary in a wheelchair (plaintiff's complaint attached page one). A review of the certified copy of plaintiff's medical records submitted as Exhibit B to defendants Hammack and Battle's special report does not reveal a request for medical treatment by plaintiff on that date. Plaintiff does not state what his medical problem was on that particular date; therefore, even if the court were to search plaintiff's medical records to determine if he meant to mention a different date, it would do no good. In addition, plaintiff received a copy of the defendants' special report in which it was clearly noted that no where in the medical records does it reflect a request for treatment on March 26, 2000. Further, plaintiff was given an opportunity to respond to the defendants' special reports (see Doc. # 34) in which he could have addressed this issue, but he did not. Defendant Hammack is entitled to summary judgment on this claim  because plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

17

CONCLUSION

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. Accordingly, defendants' motions for summary judgment are due to be GRANTED and this action is due to be DISMISSED WITH PREJUDICE. A Final Judgment will be entered.

The Clerk is DIRECTED to serve a copy of this memorandum opinion upon the plaintiff and upon counsel for the defendants.

DATED this 3rd day of October, 2005.

_____
**ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE**